Elba Torres, Petitioner *v.* Commonwealth of Pennsylvania, Department of Public Welfare, Respondent.

Argued September 15, 1978, before Judges CRUMLISH, JR., WILKINSON, JR. and CRAIG, sitting as a panel of three.

*Susan Wood,* with her *Gregory Paulson,* for petitioner.

*Linda M. Gunn,* Assistant Attorney General, for respondent.

OPINION BY JUDGE CRUMLISH, JR., November 14, 1978:

Elba Torres (Claimant) appeals from a decision of the Department of Public Welfare (Department) finding that she is the common-law spouse of Herman (a/k/a German) Santana (Santana) and instructing the County Board of Assistance to determine the amount of income available to her from Santana so that her welfare benefits could be either adjusted or terminated.

Claimant argues that she and Santana are not common-law spouses and that the Department's finding is erroneous because there is neither proof nor findings of cohabitation and reputation or an agreement of marriage.

The Department found that Claimant and Santana lived together with their two minor children; that neither Santana nor the two children received public assistance; that Santana supports the two children; and that Claimant represented herself as Santana's wife in order to obtain medical insurance under his name, to secure a bank loan, to purchase furniture, and to borrow textbooks.

At the referee's hearing, the County Board of Assistance adduced evidence that Santana's prior marriage to another woman had been terminated by divorce on May 10, 1974, and that Santana was the father of two of Claimant's children: Margaret, born October 14, 1971, and Mervin, born October 21, 1974.

Claimant introduced written statements executed by Santana and by herself denying that they had ever intended to be husband and wife. Claimant testified that the only reason Santana and she lived together was to assist her in raising their children and that her occasional use of Santana's name was solely for pragmatic reasons.

Marriage is a civil contract that must be proved by an agreement *per verba de presenti, viz.,* one uttered with an intent to establish the relation of husband and wife. *See Rager v. Johnstown Traction Co.,* 184 Pa. Superior Ct. 474, 134 A.2d 918 (1957). Although cohabitation of the parties and the reputation that they are married do not, in themselves, constitute a marriage, they constitute evidence from which a marriage may be found. *McGrath's Estate,* 319 Pa. 309, 179 A. 599 (1935).

In *Earley v. Department of Public Welfare,* 13 Pa. Commonwealth Ct. 17, 317 A.2d 677 (1974), we held that when both parties to a reputed marriage deny its existence, the Department bears the burden of proving a marriage. We further said that the Department must meet a heavier burden when the present relationship between the purported spouses began meretriciously. There, the Department must overcome the presumption that relationships that are meretricious at the outset remain meretricious. Evidence of continuing cohabitation and reputation is insufficient to overcome that presumption; the Department must put forth clear and convincing evidence of a valid marriage contract entered into *after* the

impediment to marriage has been removed. Thus, the Department bears the burden of showing some positive act, some change of relation between the parties, or some exchange *per verba de presenti*, after the removal of the obstacle to marriage. *See Pierce v. Pierce*, 355 Pa. 175, 49 A.2d 346 (1946); *Earley, supra; Mainor v. Midvale*, 192 Pa. Superior Ct. 367, 162 A.2d 27 (1960).

Upon examination of the instant record, we conclude that the Department has not met its burden.[1] It is clear that the present relationship between Claimant and Santana began while Santana was still married to another woman.[2] The absence of any evidence in the record that their relationship underwent any change in status after Santana's divorce necessitates our reversal of the Board's decision. While this decision may provide speculation for philosophers of contrary moral persuasion, it is neither our responsibility nor our purpose to make a judgment on the merits of the proposition often proffered that those who engage in illicit behavior should not be encouraged by the availability of government-sponsored financial security.

Accordingly, we

### ORDER

AND Now, this 14th day of November, 1978, the order of the Department of Public Welfare dated

---

[1] Our scope of review is limited by Section 44 of the Administrative Agency Law, Act of June 4, 1945, P.L. 1388, *as amended*, 71 P.S. §1710.44. We must affirm the Department's decision unless the adjudication did not accord with the law, Claimant's constitutional rights have been violated, or necessary findings of fact are not supported by substantial evidence. *Department of Public Welfare v. Lesser*, 24 Pa. Commonwealth Ct. 1, 354 A.2d 17 (1976).

[2] One of their children was born more than two years before Santana's divorce; the other was born five months after his divorce.

April 27, 1977, directing the Lancaster County Assistance Office to ascertain the amount of income available to Elba Torres from Herman (a/k/a German) Santana and to make any appropriate reduction or termination of her assistance grant is hereby reversed, and her public assistance grant is hereby reinstated.